# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| PEDRO M. VELEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>    Defendant. | No. 18-CV-2055-LTS-KEM<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Pedro M. Velez seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Velez argues that the Administrative Law Judge (ALJ), Mikel Lupisella, erred in weighing medical opinion evidence and in developing the record about the impact of Velez's impairments on his ability to work. Velez also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **affirming** the ALJ's decision.

## *I.     BACKGROUND*[2]

Velez was born in 1968 and completed the 11th grade in high school. AR 42-43, 260.[3] Velez filed prior applications for both disability insurance benefits and SSI benefits in March 2010, the denials of which became final on January 8, 2015. AR 40, 124.

---

[1] Commissioner Andrew Saul is substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 13).

[3] "AR" refers to the administrative record below, filed at Docs. 10-1 to 11-6.

Velez last worked in early 2007 in telemarketing and alleged his disability began on January 1, 2007. AR 40, 43, 124, 282. Velez protectively filed his current application for SSI benefits on April 27, 2015, alleging disability due to chronic lower back and left knee pain, diabetes, neuropathy, low blood pressure and vertigo, and depression. AR 12, 123, 138. His application was denied initially in October 2015 and on reconsideration in January 2016. AR 12, 138-39.

At Velez's request, an administrative hearing was held on August 31, 2017. AR 12, 35. Prior to the hearing, Evans Komen, a nurse practitioner who managed Velez's psychological medications (NP Komen), issued mental impairment interrogatories dated August 21, 2017. AR 1293-1300. On November 24, 2017, the ALJ issued a written opinion following the familiar five-step process outlined in the regulations[4] in determining Velez was not disabled since filing his application on April 27, 2015. AR 12-29. At steps one and two, the ALJ found that Velez had not engaged in substantial gainful activity during the relevant period and that Velez suffered from the following severe impairments: "diabetes mellitus; peripheral neuropathy; degenerative joint disease; degenerative disc disease status post lumbar operation; obesity; major depressive disorder; psychotic disorder; history of substance abuse (alcohol and drugs); degenerative joint disease of the right shoulder, status post recent operation on July 31, 2017." AR 14. The ALJ determined at step three that Velez's impairments, neither singly nor in combination, met or medically equaled the severity of a listed impairment. AR 15-16. To determine

---

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." **King v. Astrue**, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." **Goff v. Barnhart**, 421 F.3d 785, 790 (8th Cir. 2005) (quoting **Eichelberger v. Barnhart**, 390 F.3d 584, 591 (8th Cir. 2004)).

Velez's ability to perform past work (at step four) and other work (at step five), the ALJ determined Velez's residual functional capacity (RFC)[5]:

> [Velez] has the [RFC] to perform light work . . . except he cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, one flight at a time with the use of a handrail. [He] can occasionally balance, stoop, kneel, crouch, and crawl. [He] can occasionally reach overhead with the right dominant upper extremity and he can frequently reach in all other directions with the right dominant upper extremity. [Velez] can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery. [He] is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line) and he is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes. [He] is limited to occasional and superficial interaction with supervisors and he is limited to occasional transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should largely deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

AR 16.

In determining Velez's RFC, the ALJ considered Velez's statements and testimony[6] about the limiting effects of his impairments, objective medical findings and treatment records, opinions and information from the consultative examination, opinions from NP Komen's interrogatory responses, Velez's Global Assessment of Functioning (GAF) scores, Velez's activities of daily living, the nature and effectiveness of Velez's treatment, and the opinions of nonexamining state agency consultants. AR 16-27. The ALJ found Velez had no past relevant work. AR 27. Based on Velez's age, education, work experience, and determined RFC, the ALJ found Velez could perform other work

---

[5] Residual functional capacity means "the most that a claimant can do despite her limitations." **Sloan v. Saul**, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 416.945(a)(1)**).

[6] In his complaint, Velez raised issues with the ALJ's rejection of his subjective allegations. Doc. 4 at 2. Velez failed to address this issue in his brief (Doc. 14) and the issue is therefore abandoned. *See* **Hacker v. Barnhart**, 459 F.3d 934, 937 n.2 (8th Cir. 2006).

that exists in significant numbers in the national economy, including router, motel cleaner, and mail room clerk. AR 28-29. Accordingly, the ALJ found Velez was not disabled. AR 29.

The Appeals Council denied Velez's request for review on June 10, 2018 (AR 1), making the ALJ's decision that Velez is not disabled the final decision of the Commissioner. *See* **20 C.F.R. § 416.1481**. Velez filed a timely complaint in this court (Docs. 1, 4). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 14, 15, 16), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Velez argues the ALJ erred in determining his RFC by not properly weighing NP Komen's opinions about his mental impairments and by failing to obtain an opinion from a treating source or consultative examiner about his physical impairments. Velez also argues the ALJ's appointment to the position violates the Appointments Clause of the United States Constitution. I will address each argument in turn.

4

### A. *Weight Assigned to the Nurse Practitioner's Opinion*

Velez argues the ALJ failed to give sufficient reasons for assigning little weight to the opinion of NP Komen in determining Velez's mental RFC. Doc. 14 at 4-5. Velez saw NP Komen every four to six weeks from June 28, 2016, through July 21, 2017, for management of his mental health medications. AR 1007-26. NP Komen provided interrogatory responses dated August 21, 2017, addressing the limitations caused by Velez's mental impairments (diagnosed by NP Komen as chronic schizophrenia and antisocial personality disorder). AR 1293-1300. NP Komen opined that Velez's impairments caused functional limitations in the following areas:

**In performing unskilled work:**

- **No useful ability to function:**
    - complete a normal workday without interruptions;
    - perform at a consistent pace without unreasonable rest periods;
    - ask simple questions or request assistance;
    - accept instructions and criticism from supervisors;
    - get along with co-workers or peers;
    - respond to changes in a routine work setting;
    - deal with normal work stress.

- **Unable to meet competitive standards:**
    - remember work-like procedures;
    - maintain attention for two-hour periods;
    - sustain ordinary routine without special supervision;
    - work in coordination and proximity to others;
    - be aware of and avoid normal hazards.

- **Seriously limited:**
    - understand, remember, and carry out short and simple instructions;
    - maintain regular attendance and be punctual within customary tolerances;
    - make simple, work-related decisions.

**In performing semiskilled and skilled work:**

- **Seriously limited:**
    - set realistic goals and make plans independently of others;
    - deal with stress of semiskilled and skilled work.

- **Limited but satisfactory:**
    - understand and remember detailed instructions;
    - carry out detailed instructions.

**To do particular types of jobs:**

- **Seriously limited:**
    - interact appropriately with the general public;
    - travel in unfamiliar places.

- **Limited but satisfactory:**
    - maintain socially appropriate behavior;
    - adhere to basic standards of neatness and cleanliness;
    - use public transportation.

AR 1295-97.

The ALJ outlined NP Komen's opined limitations. AR 25. The ALJ noted that NP Komen was not an acceptable medical source and that his conclusions "standing alone" were insufficient to substantiate severe or disabling vocational limitations. AR 25. Velez argues the ALJ misstated the law in noting NP Komen's opinion could not support severe or disabling vocational limitations. Doc. 14 at 4. I disagree—it appears the ALJ was referring to the weight due to NP Komen's opinion as a nurse practitioner.

For claims filed prior to March 27, 2017 (such as Velez's), nurse practitioners did not constitute acceptable medical sources whose opinions were entitled to great or controlling weight. *See* **20 C.F.R. §§ 416.902(a), 416.913(a), 416.927**; **Revisions to Rules Regarding the Evaluation of Medical Evidence**, 82 Fed. Reg. 5844, 5873, 5880-81 (Jan. 18, 2017). Nurse practitioners qualified as "other" medical sources whose opinions could be used to determine the severity of a claimant's impairments and how the impairments affect the claimant's ability to work. *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)). An ALJ must consider such opinions, *id.*, and considers the following factors in assigning them weight:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. § 416.927(c)**); **Social Security Ruling (SSR) 06-03p**, 71 Fed. Reg. 45593, 45595-96 (Aug. 9, 2006). Even though the opinion of a nurse practitioner treating mental health may be entitled to great weight under certain circumstances, such opinions may be given less weight if they are unsupported, internally inconsistent, or inconsistent with other evidence in the record. *Lacroix*, 465 F.3d at 886-87.

Here, the ALJ assigned NP Komen's opinion little weight because it was "inconsistent with the level of symptoms, treatment, and observed limitations throughout the medial evidence." AR 25. The ALJ did not elaborate further, and Velez argues this reason was "too vague" to support the ALJ's decision to give the opinion little weight (Doc. 14 at 4). The ALJ could properly discount NP Komen's opinion based on the findings of inconsistency. *Lawson*, 807 F.3d at 967. Prior to assigning weight to NP Komen's opinion, the ALJ outlined (in detail) treatment records from NP Komen and other providers. AR 17-25. These records support the ALJ's conclusion that NP Komen's opinion was inconsistent with the medical evidence in the record.

First, NP Komen's opinion appears inconsistent with Velez's overall reports about hallucinations. Velez reported suffering from auditory hallucinations during five of eleven visits with NP Komen. AR 1008, 1021 (described as occasional in June 2016 and April 2017), AR 1009 (continuous, auditory hallucinations with voices getting louder in August 2016), AR 1022 (hallucinations "slightly subsided" but still bothersome in May 2017), AR 1024 (reported severe psychosis (hearing mean voices) for three-to-four days in late June or early July 2017; voices dissipated and reported no hallucinations by visit on July 21, 2017). Velez also reported hallucinations during a few visits with other

7

providers and during the consultative examination. AR 870 (September 2015 consultative examination); AR 963, 979 (symptom reviews during visits for back and neck pain in October 2015 and March 2016); AR 1088 (reported hearing voices "at times" in May 2016). The treatment notes provide no indication of how such hallucinations impacted Velez's abilities to function, and Velez gave no indication of how they impacted his daily life (including the severe psychosis he reported to NP Komen in July 2017). Similarly, although Velez reported feeling down and tired during visits with NP Komen, there is no indication that these symptoms affected his daily functioning. *See* AR 1017 (felt down, depressed, and anxious when his sister was ill and he was unable to visit her), AR 1018 (felt down, depressed, and irritable after he stopped taking his medications); *but see* AR 1024 (felt "somewhat down" and tired, "making it difficult for him to get things accomplished"). Treatment notes from early July 2017 (when Velez reported suffering severe psychosis) show normal examination results and no indication that Velez was suffering from hallucinations or psychosis. AR 1260 (June 27, 2017); AR 1050-53, 1281, 1288 (July 11, 2017); AR 1177, 1180-81 (July 12, 2017). Velez denied suffering current hallucinations during most of his visits with NP Komen and other treatment providers. *See* AR 858, 862, 941, 949, 953, 957, 984, 988, 993, 1011, 1013, 1017, 1024, 1031, 1033, 1040, 1043, 1045, 1048, 1051. These portions of the record do not support the severe limitations in NP Komen's interrogatory responses.

Next, NP Komen's opinion appears inconsistent with his own treatment records.[7] *See Martise v. Astrue*, 641 F.3d 909, 918-919, 924-26 (8th Cir. 2011) (finding ALJ may "justifiably discount a treating physician's opinion when that opinion 'is inconsistent with the physician's clinical treatment notes.'" (quoting *Davidson v. Astrue*, 578 F.3d 838,

---

[7] NP Komen's opinion also seems internally inconsistent. For example, NP Komen opined that for unskilled work, Velez would not meet competitive standards in his ability to remember work-like procedures and that he was seriously limited in his ability to understand, remember, and carry out very short and simple instructions. AR 1295. NP Komen then found that for semiskilled and skilled work, Velez could satisfactorily understand, remember, and carry out detailed instructions. AR 1297.

843 (8th Cir. 2009) (affirming the ALJ's decision to give "less weight" to a treating source opinion based in part on the source opining that the claimant suffered from marked limitations in concentration when the source's treatment notes indicated that the claimant's concentration appeared intact))). In the interrogatory responses, NP Komen listed diagnoses of chronic schizophrenia and antisocial personality disorder. AR 1293. His treatment notes consistently included a diagnosis of schizophrenia, but never a diagnosis of antisocial personality disorder. AR 1007-23, 1025.[8] Other inconsistencies exist between NP Komen's treatment notes and opinion. As noted above, NP Komen's records lack indications that Velez's hallucinations, depression, and anxiety were causing significant limitations in his daily activities. Indeed, treatment notes (including the most recent ones) indicate improvements in Velez's condition. AR 1011 ("things . . . going fairly well" with less anxiety and tension in September 2016); AR 1012-13 (anxiety under control and improvement with hallucinations in October 2016); AR 1014 ("doing fairly well" with improved moods and decreased irritability and hallucinations in November 2016); AR 1015 (mood fairly stable and no hallucinations in January 2017); AR 1017 (no hallucinations in February 2017); AR 1018-19 (denied hallucinations in March 2017 despite stopping medications the week prior); AR 1020 (April 2017 indications mood improved, more upbeat, and less irritable, affect "less constricted compared to normal; recently traveled to New York for the week); AR 1022 ("moods have been fairly okay, getting much better" in May 2017); AR 1024 (improved moods July 21, 2017).

In addition, NP Komen observed a depressed mood and tension or anxiety during multiple mental status examinations. AR 1010, 1013, 1018-19, 1022; *see also* AR 1014 (only "slightly tense, anxious and irate" at times during interview), AR 1015 (mood

---

[8] One treatment note (from March 2017) listed the sole diagnosis as "[b]ipolar disorder, mixed, moderate" and made no mention of schizophrenia. AR 1018-19. This is the only time bipolar disorder was mentioned. Three treatment notes include a diagnosis of generalized anxiety disorder and one treatment note includes a diagnosis of major depressive disorder (AR 1013-14, 1017), but NP Komen's interrogatory responses mention anxiety and depression without diagnosing these conditions (AR 1293-94, 1296-97).

9

slightly constricted, tense, anxious, and irritable), AR 1017 (appeared "somewhat tense and anxious" and "a little bit depressed"), AR 1024 (appeared tired and slightly lethargic). Despite those observations, NP Komen generally found that Velez was oriented and had fair hygiene, normal speech and thought content, fair insight and judgment, and maintained eye contact. AR 1011-22, 1024.

Similarly, other treatment providers also routinely found Velez was oriented, had normal mood and affect, maintained fair to good attention and eye contact, had appropriate or good behavior, and fair impulse control and judgment. AR 858, 862, 941, 949, 953, 957, 999, 1031, 1033-34, 1061, 1072, 1076, 1079-80, 1131, 1135, 1141, 1147, 1151, 1164-65, 1171, 1181; *see also* AR 1084, 1092, 1102, 1125 (alert and oriented, anxious but not depressed mood). The consultative examiner noted Velez was pleasant and cooperative, maintained good eye contact, normal emotional expressions, and no paranoia or delusions during the consultative examination. AR 869-70. The examination results from NP Komen and other providers are inconsistent with NP Komen's opined limitations. *See* **Halverson v. Astrue**, 600 F.3d 922, 930 (8th Cir. 2010) (treatment notes showing "multiple mental status examinations . . . [that] revealed no abnormalities" and where claimant "was repeatedly noted to be alert and oriented with normal speech and thought processes" were inconsistent with provider's opinion that claimant's depression, anxiety, and post-traumatic stress disorder made claimant "unable to perform a number of job-related tasks essential to the average workplace").

Other evidence in the record further contradicts NP Komen's opinions. In his function report, Velez discussed depression and anxiety, but made no mention of hallucinations. AR 305-12. He reported occasional issues with memory, but no other issue with his mental abilities (including completing tasks, concentrating, understanding and following instructions, and getting along with others). AR 309, 311. During the administrative hearing, Velez testified his depression kept him from socializing and that hallucinations made it difficult for him to concentrate, but he provided no other indication that they affected him negatively and indicated medications were generally helpful. AR

10

48-51, 53-54. Although the consultative examiner speculated that Velez "may have difficulties learning complex work duties," he included no specific functional limitations in his report, aside from noting that Velez could benefit from assistance in handling his financial affairs. AR 872.

Overall, substantial evidence supports the ALJ's decision to discount NP Komen's opinion based on inconsistency with the record. *See* ***Stormo v. Barnhart***, 377 F.3d 801, 805-06 (8th Cir. 2004) (opinions may be "given less weight if they are inconsistent with the record as a whole"); *see also* ***Schwandt v. Berryhill***, 926 F.3d 1004, 1011 (8th Cir. 2019) ("The results of a claimant's medical examinations and the claimant's reported daily activities can undermine a treating physician's opinion."); ***Toland v. Colvin***, 761 F.3d 931, 935-36 (8th Cir. 2014) (upholding ALJ's decision to discount medical opinions imposing limitations not reflected in provider's own treatment notes or other medical evidence in the record). Accordingly, I recommend affirming the weight the ALJ assigned to NP Komen's opinion.

### B.  *Development of the Record / Some Medical Evidence*

The ALJ determined Velez maintains the physical RFC to perform light work. AR 16. This requires the ability to lift and carry ten pounds frequently and twenty pounds occasionally, and to stand, walk, and sit (with normal breaks) for a total of about six hours in an eight-hour workday. **20 C.F.R. § 416.967(b)**; **SSR 83-10**, 1983 WL 31251, at *5-6 (Jan. 1, 1983); *see also, e.g.*, **SSR 96-9p**, 61 Fed. Reg. 34478, 34480 (July 2, 1996). Velez argues the ALJ erred by failing to obtain an opinion from a treating source or consultative examiner about his physical RFC, and thus, the ALJ's RFC opinion that Velez could perform light work is not supported by some medical evidence. Doc. 14 at 6-9. Velez argues that without such an opinion, especially considering "significant developments" that occurred after the last medical opinions from state agency consultants in January 2016, the ALJ could not properly determine that Velez was capable of standing

or walking for six hours in an eight-hour workday as required for light exertional work. Doc. 14 at 7, 10; Doc. 16 at 2-3.

Velez relies primarily on *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), and *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001). In *Nevland*, the court concluded that the ALJ should have obtained a treating-source opinion or consultative examination because the record contained no medical opinion indicating how the claimant's impairments (which prevented claimant from performing past relevant work) affected the claimant's ability to do other work. *Nevland*, 204 F.3d at 857-58. The court in *Lauer* rejected the ALJ's RFC determination (which was based on the opinion of a nonexamining reviewing consultant) because the ALJ found more severe impairments (at step 2) than the consultant, and the medical basis for the ALJ's decision was unclear. *Lauer*, 245 F.3d at 704-05 (noting the ALJ found fewer RFC limitations (in connection with steps 4 and 5) than the claimant's treating physicians, whose opinions the ALJ did not adopt, and the nonexamining consultant based his opinion on incomplete treatment records and fewer impairments than those found by the ALJ). Remand under *Nevland* is not required when "other medical evidence in the record"—such as treatment notes—"clearly establishes a claimant's RFC to do other work[] and to function in the workplace." *Kruger v. Colvin*, No. C13-3036-MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014), *report and recommendation adopted by* 2014 WL 2884038 (June 25, 2014); *see also* **Symens v. Colvin**, No. CIV 13-3006-RAL, 2014 WL 843260, at *26 (D.S.D. Mar. 4, 2014) (holding that remand is not required under *Nevland* when "the ALJ engaged in an extensive review of the medical evidence. . . . [that] supported the ALJ's" RFC and "was also consistent with the reports from the" nonexamining state agency consultants); **Knight v. Astrue**, No. 12-06004-CV-SJ-NKL-SSA, 2012 WL 4092356, at *7 (W.D. Mo. Sept. 17, 2012) ("*Nevland* stands for the proposition that, where the claimant's alleged RFC is otherwise supported by substantial evidence in the record, the ALJ may not rely solely on the opinions of non-examining sources in rejecting the alleged RFC.").

12

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). "The ultimate question . . . is whether a critical issue was underdeveloped . . . such that the ALJ's decision was not supported by substantial evidence." *Kruger*, 2014 WL 2884038, at *2; *see also* **20 C.F.R. § 416.919a(b)** (Social Security Administration may purchase a consultative examination "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient" to resolve the claim).

In determining Velez's RFC, the ALJ relied on a thorough review of the medical records (AR 17-26) and opinions from the nonexamining state agency consultants (AR 27). The ALJ incorporated each of the physical limitations found by the state agency consultants (even though the ALJ assigned the opinions only "partial weight") and added additional limitations (restricting the use of stairs to "one flight at a time with the use of a handrail," allowing only occasional overhead reaching with the right upper extremity, and allowing no exposure to hazards). AR 16, 27, 130-31, 148-50; *see Dickson v. Berryhill*, No. 16-CV-00267-NCC, 2017 WL 1152038, at *7-9 (E.D. Mo. Mar. 28, 2017) (holding that some medical evidence supported the ALJ's RFC determination even though the ALJ gave no more than some weight to all the medical opinions).

Velez argues the state agency consultants' opinions from January 2016 do not constitute sufficient medical evidence because Velez experienced significant changes after the opinions issued (primarily knee and shoulder pain after January 2016). Doc. 16 at 2-3. Velez began experiencing shoulder pain in November 2016. AR 992-93, 1127-28. Examinations showed decreased range of motion, pain, and decreased strength. AR 995, 1130, 1157, 1162, 1172, 1180; *see also* AR 1052, 1175 (ongoing pain despite injections). Velez underwent rotator cuff surgery on July 31, 2017. AR 45-46, 1183. Velez testified one month later (in August 2017) that he was following up with physical therapy and

13

occupational therapy. AR 45-46, 52.[9] He further testified he had difficulty hanging onto stairway railings and reaching his right arm above shoulder level (AR 44-45, 47), and that he could not work due to back pain and being unable to lift more than fifteen or twenty pounds (AR 48-49, 54). He said that overall, his medications helped (AR 49) and that he could manage the steep stairs at his duplex (AR 44-45). Other than having difficulty holding onto railings, reaching overhead, and lifting, Velez did not indicate any limitations caused by his back and shoulder pain or issues with his knees. The ALJ's RFC determination included limitations for lifting, reaching overhead, and climbing stairs consistent with Velez's testimony. AR 16.

Although Velez refers to his shoulder issues (Doc. 14 at 8), he mainly argues that some medical evidence does not support the ALJ's findings about his ability to stand, sit, or walk for six hours in an eight-hour day. Doc. 14 at 7-10. The medical records show improvements in Velez's pain following his back surgery in July 2015. *Compare* AR 635, 640, 646, 651 (pain rated from six to ten before surgery) *with* AR 665, 966, 972, 982, 987, 1063, 1074, 1108, 1159, 1177 (pain rated from three to five following surgery); *see also* AR 665 (less radiating pain noted in August 2015), AR 967, 973, 977, 983 (reported 70-75% improvement following surgery), AR 1187 (reported no back pain in July 2017); *but see* AR 963, 1104 (pain at six in October 2015), AR 1104 (pain at seven in August 2016, took more medication than prescribed due to pain), AR 997 (pain at eight in February 2017 after he fell), 1157 (decreased range of motion and pain in March 2017). Similarly, although Velez suffered ongoing knee pain, it generally seemed to improve or remain at the same level from November 2015 through July 2017. AR 977-78, 992, 1027, 1029, 1038, 1040, 1042, 1045, 1077, 1159, 1177. In June 2017, following his bunionectomy, Velez was walking on his foot against medical advice and "admit[ted] no pain." AR 1261. In July 2017, Velez reported zero pain and the provider

---

[9] The record does not contain treatment records from the surgery or follow up visits.

(after noting normal gait during examination) encouraged Velez to engage in an exercise regimen to address his obesity. AR 1281, 1288-90. Accordingly, the subsequent treatment records are consistent with the state agency consultants' opinions.

The overall record substantially supports the ALJ's RFC determination. Based on the ALJ's review of the treatment records and reliance on the state agency consultants' opinions, some medical evidence supports the ALJ's RFC determination. *See Symens*, 2014 WL 843260, at *26; **Kamann v. Colvin**, 721 F.3d 945, 949-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulate[d] his own medical opinion" when the ALJ "thoroughly reviewed years of medical evidence on record and issued [a mental RFC] finding consistent with the views of . . . the reviewing agency psychologist"); *see also* **Harvey v. Barnhart**, 368 F.3d 1013, 1015-16 (8th Cir. 2004) (concluding opinion from nonexamining consultative psychiatrist, which was supported by the medical evidence and inconsistencies in claimant's testimony, substantially supported the ALJ's RFC determination). The record does not support greater limitations than those imposed by the ALJ. Accordingly, I find the ALJ did not err in determining Velez's physical RFC.

As I have found no error, I decline to address Velez's argument that the harmless-error doctrine is not applicable. *See* Doc. 14 at 9-10. I note, generally, that Velez's argument hinges on whether an "apparent conflict" exists between an RFC limitation to simple and routine tasks and a Dictionary of Occupational Titles (DOT) requirement of "level 3 reasoning"—an issue I addressed (and declined to decide) in *Hall v. Commissioner of Social Security*, No. 18-CV-2032-LTS-KEM, 2019 WL 7666529, at *9-13 (N.D. Iowa Aug. 16, 2019), *report and recommendation adopted*, 2019 WL 5085427 (Oct. 10, 2019),[10] and that courts in the Eighth Circuit are split on. *Compare*

---

[10] *See also* **Dighton v. Saul**, 18-CV-0057-LTS-KEM, Doc. 13 at 9-18 (N.D. Iowa Sept. 4, 2019) (addressing similar issue and finding in claimant's favor after noting the outcome hinged on the specific facts of that case in which the claimant's RFC included additional limitations not present

*Gustafson v. Astrue*, No. CIV. 10-4962 (DSD/LIB), 2011 WL 6219641, at *5, *7-8 (D. Minn. Nov. 29, 2011) (no conflict existed between DOT description of jobs requiring a reasoning level of three and limitation to "simple, routine, and repetitive tasks"), *report and recommendation adopted,* 2011 WL 6218211 (Dec. 14, 2011), *with Viessman v. Saul*, No. 4:19-CV-04063-VLD, 2020 WL 133431, at *23-26 (D.S.D. Jan. 13, 2020) (apparent conflict existed between DOT description of jobs requiring reasoning level of three and limitation to "simple, routine repetitive tasks" and that remand was thus required).[11]

### C. Appointments Clause

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia*, 138 S. Ct. at 2051.

The Supreme Court held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) were inferior officers subject to the Appointments Clause. *Id.* Velez argues that following the reasoning in *Lucia*, Social Security ALJs are inferior

---

here), *report and recommendation adopted*, 2019 WL 4731943 (Sept. 27, 2019) (clear-error review).

[11] Velez does not make any argument with respect to the mail room clerk job, a position that the ALJ relied upon in finding a significant number of jobs existed in the national economy Velez could perform and that the DOT indicates requires a reasoning level of three. AR 28; **DOT § 209.687-026**. Even if Velez has not forfeited this argument, and even if an unresolved conflict exists, I would find any error harmless, since only 2,272 mail room clerk positions exist in the national economy, and the VE testified that an additional 5,938 positions exist that Velez could perform as an addresser, which the ALJ did not rely upon in making his step-five finding (and which only requires a reasoning level of two). AR 57; **DOT § 209.587-010**.

officers subject to the Appointments Clause, and that his case should be remanded for a new hearing before a constitutionally appointed ALJ. Velez did not raise this issue at any point during the administrative proceedings. Thus, the Commissioner argues that Velez has forfeited her Appointments Clause challenge.

Every judge in the Northern District of Iowa has addressed this issue and held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration (and have declined to excuse the forfeiture). *See Rollie v. Saul*, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019) (Williams, J.); *Murphy v. Berryhill*, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.), *report and recommendation adopted*, 2019 WL 2372896 (N.D. Iowa Apr. 10, 2019), *appeal filed*, No. 19-2202 (8th Cir. June 12, 2019); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *4-6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); *Davis v. Comm'r of Soc. Sec.*, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.), *appeal filed*, No. 18-3422 (8th Cir. Nov. 9, 2018). Indeed, although the Eighth Circuit has not yet addressed this issue (appeals are pending), every district court in the Eighth Circuit has ruled uniformly in the Commissioner's favor and denied Appointments Clause challenges raised for the first time on judicial review as forfeited. *See Turner v. Saul*, No. 4:18-CV-607-RLW, 2019 WL 4246841, at *4 (E.D. Mo. Sept. 6, 2019); *Cooper v. Saul*, No. 8:18-CV-409, 2019 WL 4059758, at *12 (D. Neb. Aug. 28, 2019); *Dixon v. Berryhill*, No. 8:18CV343, 2019 WL 3253950, at *8 (D. Neb. July 19, 2019); *Long M. v. Berryhill*, No. 18-CV-862 (ECW), 2019 WL 2163384, at *8 (D. Minn. May 17, 2019); *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); *Audrey M.H. v. Berryhill*, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *Catherine V. v. Berryhill*, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019)*;* *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018).

The vast majority of district courts have held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration. *See, e.g.*, **Morrow v. Berryhill**, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); **Kline v. Berryhill**, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); **Hutchins v. Berryhill**, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); **Diane S.P. v. Berryhill**, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); **Valasquez ex rel. Valasquez v. Berryhill**, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); **Flack v. Comm'r of Soc. Sec.**, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). One circuit court and a few district courts, however, have found Social Security claimants do not need to raise Appointments Clause challenges to preserve the argument for judicial review or have otherwise excused the forfeiture. *See* **Cirko ex rel. Cirko v. Comm'r of Soc. Sec.**, 948 F.3d 148 (3d Cir. 2020); **Ready v. Berryhill**, No. CV 18-04289, 2019 WL 1934874, at *2 (E.D. Pa. Apr. 30, 2019); **Culclasure v. Comm'r of Soc. Sec. Admin.**, No. 18-1543, 2019 WL 1641192, at *12 (E.D. Penn. Apr. 16, 2019); **Bradshaw v. Berryhill**, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *2-11 (E.D.N.C. Mar. 26, 2019); **Probst v. Berryhill**, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. March 22, 2019); **Bizarre v. Berryhill**, 364 F. Supp. 3d 418, 425 (M.D. Penn. 2019); **Fortin v. Comm'r of Soc. Sec.**, No. CV 18-10187, 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019), *report and recommendation rejected in relevant part*, No. 18-10187, 2019 WL 1417161 (E.D. Mich. Mar. 29, 2019); **Muhammad v. Berryhill**, No. CV 18-172, 2019 WL 2248694, at *11-12 (E.D. Pa. Nov. 2, 2018), *report and recommendation rejected*, *id.* at *3-7 (May 23, 2019). Velez relies on three of these cases from other courts that have concluded claimants were not required to raise a constitutional challenge in the underlying

18

proceedings and that a failure to do so does not constitute waiver of the ability to raise such challenges on appeal. Doc. 16 at 4 (citing *Culclasure*, *Bizzare, and Bradshaw*).

I decline to follow decisions from district courts outside the Eighth Circuit. Almost all of Velez's arguments have been previously addressed (and rejected) by other courts. I adopt the reasoning of these decisions (and of the majority of courts to address the issue). In SSR 19-1p, the Social Security Administration directs the Appeals Council to vacate decisions denying benefits issued by ALJs prior to July 16, 2018, and rule on the disability determination de novo when the claimant has raised an Appointments Clause challenge before the agency. *Id.* at 9583. As Velez did not raise the Appointments Clause challenge at the administrative level, SSR 19-1p does not apply. I recommend the district judge reject Velez's Appointments Clause challenge.

### III. CONCLUSION

I recommend that the district court judge **affirm** the decision of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 12th day of February, 2020.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa