# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

PEDRO M. VELEZ,

        Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,

        Defendant.

No.  C18-2055-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

## I.  INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable
Kelly K.E. Mahoney, Chief United States Magistrate Judge.  *See* Doc. No. 18.  Judge
Mahoney recommends that I affirm the decision by the Commissioner of Social Security
(the Commissioner) denying Pedro M. Velez's application for supplemental security
income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381-
1383f.  Velez has filed timely objections (Doc. No. 19) and the Commissioner has filed
a response (Doc. No. 20).

## II.  APPLICABLE STANDARDS

### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial
evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.
2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be conclusive . . .").  "Substantial
evidence is less than a preponderance, but enough that a reasonable mind might accept
as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir.

2003).  The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)).  The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.     Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard.  *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").  As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude

further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).


### III.    THE R&R

Velez alleges disability beginning on January 1, 2007, due to chronic lower back and left knee pain, diabetes, neuropathy, low blood pressure, vertigo and depression. Doc. No. 18 at 2 (citing AR 12, 123, 138). He last worked in early 2007 in telemarketing. He filed prior applications for both disability insurance benefits and SSI in March 2010, the denials of which became final on January 8, 2015. *Id.* at 1 (citing AR 40, 124). He protectively filed his current application for SSI on April 27, 2015. *Id.* at 2 (citing AR 12, 123, 138). His application was denied initially in October 2015 and on reconsideration in January 2016. *Id.* (citing AR 12, 138-39). An administrative hearing was held on August 31, 2017. *Id.* (citing AR 12, 35). Velez and a vocational expert (VE) testified.

On November 20, 2017, the ALJ issued a written opinion finding Velez was not disabled since April 27, 2015. *Id.* (citing AR 12-29). The ALJ concluded Velez had severe impairments of diabetes mellitus, peripheral neuropathy, degenerative joint disease, degenerative disc disease status post lumbar operation, obesity, major depressive disorder, psychotic disorder, history of substance abuse (alcohol and drugs) and degenerative joint disease of the right shoulder, status post recent operation on July 31, 2017. *Id.* (citing AR 14). The ALJ found that none of the impairments (singly or in combination) met or medically equaled the severity of a listed impairment. *Id.* (citing AR 15-16). The ALJ determined Velez had the following residual functional capacity (RFC):

> light work . . . except he cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, one flight at a time with the use of a handrail. [He] can occasionally balance, stoop, kneel, crouch, and crawl. [He] can occasionally reach overhead with the right dominant upper

extremity and he can frequently reach in all other directions with the right dominant upper extremity. [Velez] can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery. [He] is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line) and he is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes. [He] is limited to occasional and superficial interaction with supervisors and he is limited to occasional transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should largely deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

*Id.* at 3 (citing AR 16).

The ALJ further found Velez had no past relevant work and concluded he could perform other work available in significant numbers in the national economy, including router, motel cleaner and mail room clerk. *Id.* at 3-4 (citing AR 28-29). The ALJ therefore concluded Velez was not disabled. This became the final decision of the Commissioner when the Appeals Council denied Velez's request for review on June 10, 2018. *Id.* at 4 (citing AR 1; 20 C.F.R. § 416.1481).

Velez argues the ALJ erred in determining his RFC by not properly weighing the opinions of his nurse practitioner, Evans Komen (NP Komen), regarding his mental impairments and by failing to obtain an opinion from a treating source or consultative examiner about his physical impairments. *Id.* He also argues the ALJ's appointment violates the Appointments Clause of the United States Constitution.

With regard to NP Komen's opinion, Judge Mahoney noted that Velez saw him every four to six weeks from June 28, 2016, through July 21, 2017, for management of his mental health medications. *Id.* at 5 (citing AR 1007-26). NP Komen provided interrogatory responses dated August 21, 2017, addressing limitations caused by Velez's mental impairments of chronic schizophrenia and antisocial personality disorder. These limitations included:

For unskilled work, no useful ability to function in categories of:

- Complete a normal workday and workweek without interruptions from psychologically based symptoms

- Perform at a consistent pace without an unreasonable number and length of rest periods

- Ask simple questions or request assistance

- Accept instructions and respond appropriately to criticism from supervisors

- Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes

- Respond appropriately to changes in a routine work setting

- Deal with normal work stress

Unable to meet competitive stands in:
- Remember work-like procedures

- Maintain attention for two hour segment

- Sustain an ordinary routine without special supervision

- Work in coordination with or proximity to others without being unduly distracted

- Be aware of normal hazards and take appropriate precautions

Seriously limited in:
- Understand and remember very short and simple instructions

- Carry out very short and simple instructions

- Maintain regular attendance and be punctual within customary, usually strict tolerances

- Make simple work-related decisions

He found less severe limitations for semiskilled and skilled work as well as abilities and aptitude to do particular types of jobs. AR 1295-97. The ALJ noted NP Komen was not an acceptable medical source and that his conclusions "standing alone" were insufficient to substantiate severe or disabling limitations. *Id.* at 6 (citing AR 25).

Judge Mahoney agreed that for claims filed prior to March 27, 2017 (like Velez's), nurse practitioners do not constitute acceptable medical sources whose opinions are entitled to great or controlling weight. For that time period nurse practitioners are considered "other" medical sources whose opinions could be used to determine the severity of a claimant's impairments and how the impairments affect the claimant's ability to work. *Id.* (citing *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015)). Judge Mahoney noted the ALJ must consider six factors in evaluating the weight to give the opinion of an "other" medical source:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion.

*Id.* at 7 (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008)).

Judge Mahoney observed that the ALJ assigned NP Komen's opinion little weight because it was "inconsistent with the level of symptoms, treatment, and observed limitations throughout the medical evidence." *Id.* (quoting AR 25). She disagreed with Velez that this reason was "too vague" and concluded that the record supported the ALJ's conclusion. Specifically, Judge Mahoney pointed out that NP Komen's opinion was inconsistent with Velez's reports about hallucinations. Velez reported suffering from auditory hallucinations during five of the eleven visits with NP Komen. *Id.* He also reported hallucinations during a few visits with other providers and during the consultative examination. *Id.* at 7-8. Judge Mahoney noted that the treatment notes

provide no indication of how the hallucinations impacted Velez's ability to function and Velez gave no indication of how they impacted his daily life. *Id.* at 8. Velez also denied suffering hallucinations during most of his visits with NP Komen and other treatment providers. *Id.* (citing records). Similarly, Judge Mahoney observed that while Velez reported feeling down and tired during his visits with NP Komen, there was no indication of how these symptoms affected his daily functioning. *Id.*

Next, Judge Mahoney discussed inconsistences between NP Komen's opinion and his own treatment records and internal inconsistencies in his opinion itself. She noted that NP Komen listed diagnoses of chronic schizophrenia and antisocial personality disorder in his opinion, but none of his treatment notes contained a diagnosis of antisocial personality disorder. *Id.* at 9 (citing AR 1007-23, 1025). NP Komen also opined that for unskilled work, Velez would not meet competitive standards in his ability to remember work-like procedures and he was seriously limited in his ability to understand, remember, and carry out very short and simple instructions. *Id.* at 8, n.7. However, for semiskilled and skilled work, NP Komen concluded Velez could satisfactorily understand, remember and carry out detailed instructions. *Id.*

Judge Mahoney found that the treatment notes lack any indication that Velez's symptoms were causing significant limitations in his daily activities and more recent treatment notes indicated improvements in Velez's condition. *Id.* at 9. Judge Mahoney also observed that NP Komen noted depressed mood and tension or anxiety during multiple mental status examinations, but generally found that Velez was oriented, had fair hygiene, normal speech and thought content, fair insight and judgment and maintained eye contact. Other treatment providers also found he was oriented, had normal mood and affect, maintained fair to good attention and eye contact, had appropriate or good behavior and fair impulse control and judgment. *Id.* at 10 (citing records). The consultative examiner made similar findings. *Id.* Judge Mahoney concluded the examination results from NP Komen and other providers were inconsistent with NP Komen's opined limitations. *Id.*

Finally, Judge Mahoney observed that other evidence in the record further contradicted NP Komen's opinions, including Velez's own function report, in which he made no mention of hallucinations and reported occasional issues with memory, but no other issues with mental abilities (including completing tasks, concentrating, understanding and following instructions and getting along with others). *Id.* (citing AR 305-12). While Velez testified at the hearing that his depression kept him from socializing and his hallucinations made it difficult to concentrate, he provided no other indication that they affected him negatively and admitted medications were generally helpful. *Id.* at 10-11 (citing AR 48-51, 53-54). Judge Mahoney concluded that substantial evidence supported the ALJ's decision to discount NP Komen's opinion based on inconsistency with the record. *Id.* at 11.

With regard to development of the record, Velez argues that the ALJ should have obtained a medical opinion regarding his physical RFC and that the ALJ's RFC that he could perform light work is not supported by some medical evidence. *Id.* Judge Mahoney discussed *Nevland v. Apfel*, 204 F.3d 853 (8ht Cir. 2000), and *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001), both cited by Velez. She explained that remand is not required under these cases if other medical evidence in the record (such as treatment notes) "clearly establishes a claimant's RFC to do other work[] and to function in the workplace." *Id.* at 12 (quoting *Kruger v. Colvin*, No. C13-3036-MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014), *report and recommendation adopted by* 2014 WL 2884038 (June 25, 2014)). Judge Mahoney noted that the ALJ relied on a thorough review of the medical records (AR 17-26) and opinions from the nonexamining state agency consultants (AR 27). *Id.* at 13. The ALJ incorporated the physical limitations identified by the state agency consultants, even though he gave their opinions only "partial weight." The ALJ included additional physical limitations such as restricting the use of stairs to "one flight at a time with the use of a handrail," allowing only occasional overhead reaching with the right upper extremity and allowing no exposure to hazards. *Id.* (citing AR 16, 27, 130-31, 148-50).

Judge Mahoney then addressed Velez's argument that the state agency consultants' opinions from January 2016 do not constitute sufficient medical evidence because Velez experienced changes (particularly in his knee and shoulder pain) after they issued their opinions. *Id.* Judge Mahoney noted that Velez began experiencing shoulder pain in November 2016. *Id.* (citing AR 992-93, 1127-28). He had decreased range of motion, pain and decreased strength. *Id.* (citing AR 995, 1130, 1157, 1162, 1172, 1180). Velez had rotator cuff surgery on July 31, 2017, followed up with physical therapy and occupational therapy. *Id.* (citing AR 45-46, 1183). Velez testified he had difficulty hanging onto stairway railings and reaching his right arm above shoulder level. *Id.* at 14 (citing AR 445-45, 47). He also testified about his back pain and that he was unable to lift more than 15 or 20 pounds. *Id.* (citing AR 48-49, 54). He stated that his medications helped and he could manage the steep stairs at his duplex. Other than having difficulty holding onto railings, reaching overhead and lifting, Velez did not indicate any limitations caused by his back and shoulder pain or issues with his knees. *Id.* Judge Mahoney found the ALJ's RFC determination, which included limitations for lifting, reaching overhead and climbing stairs, was consistent with Velez's testimony. *Id.*

With regard to Velez's ability to stand, sit or walk for six hours in an eight-hour day, Judge Mahoney observed that the medical records reflect improvements in Velez's pain following his back surgery in July 2015. *Id.* (citing records). Velez's knee pain also seemed to improve or remain stable from November 2015 through July 2017. *Id.* In June 2017, he was walking on his foot following a bunionectomy and admitted there was no pain and he reported zero pain at another visit in July 2017. *Id.* at 14-15. Judge Mahoney concluded the subsequent treatment records are consistent with the state agency consultants' opinions.

Overall, Judge Mahoney concluded the ALJ's RFC determination is supported by substantial evidence in the record as a whole, including some medical evidence. She found the record did not support greater physical limitations. *Id.* at 15.

Finally, Judge Mahoney addressed Velez's Appointments Clause argument. She summarized the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), and noted that Velez failed to raise this issue at any point during the administrative proceedings. She noted that every judge in the Northern District of Iowa has addressed this issue and held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration (and has declined to excuse the forfeiture). *Id*. at 16-17. She cited numerous other district courts that have taken the same position. She noted that the Third Circuit Court of Appeals and a few district courts have found that Social Security claimants need not raise an Appointments Clause challenge to preserve the argument for judicial review or have otherwise excused the forfeiture. *Id*. at 18. In keeping with the district court decisions in the Eighth Circuit (and the majority of courts to address the issue), Judge Mahoney recommends rejecting Velez's Appointments Clause challenge and affirming the decision of the Commissioner.

## IV.   DISCUSSION

Velez makes the following objections to the R&R:

- The ALJ did not provide sufficient reasons for the weight afforded to NP Komen's other medical source opinions

- The ALJ failed to fully and fairly develop the record concerning Velez's RFC

- The ALJ's appointment violates the Appointments Clause under the United States Constitution

Doc. No. 19.

### A.   Evaluation of NP Komen's Opinions

As in his principal brief, Velez argues the ALJ misstated the law in saying: "As a nurse practitioner, Mr. Komen is not an acceptable medical source and this opinion,

standing alone, cannot constitute documentation of severe or disabling vocational limitations." Doc. No. 19 at 2 (citing Doc. No. 18 at 6-7). Velez argues that opinions from any source can document severe or disabling vocational limitations. Velez acknowledges that the ALJ provided an additional explanation for the weight afforded to Komen's opinion but maintains that the alleged misstatement of law was not a good reason for giving less weight to NP Komen's opinion. *Id.* With regard to the other reason (inconsistencies with the level of symptoms, treatment and observed limitations through the medical evidence), he merely disagrees and contends the record is consistent with NP Komen's opinion. Velez acknowledges the internal inconsistencies in the opinion but argues these were minor and were not reasons cited by the ALJ.

For claims filed prior to March 27, 2017, a nurse practitioner is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a).[1] Social Security Ruling ("SSR") 06-03p nonetheless requires the ALJ to give consideration to a nurse practitioner's opinion. That ruling includes the following statements:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

> \* \* \*

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and

---

[1] These regulations list "acceptable medical sources" who can "provide evidence to establish an impairment." Nurse practitioners are not on the list.

416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

- Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists;

\* \* \*

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

\* \* \*

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most

qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Among other things, this ruling means a nurse practitioner's opinion (a) is not entitled to controlling weight and (b) cannot establish the existence of a medically-determinable impairment. However, a nurse practitioner's opinion <u>can</u> be used as evidence of the severity of an impairment and how the impairment affects the individual's ability to function. An ALJ must evaluate the nurse practitioner's opinion with reference to the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and

- Any other factors that tend to support or refute the opinion.

*See* 20 CFR §§ 404.1527(c) and 416.927(c).

Velez is correct that the ALJ misstated the law by stating NP Komen's opinion, standing alone, could not constitute documentation of severe or disabling vocational limitations. As a nurse practitioner, Komen's opinion cannot establish the existence of a

medically-determinable *impairment* but can be used as evidence of the severity of an impairment and the limitations of the impairment. *See Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (noting that nurse practitioner fit criteria of "other" medical source, who was appropriate source of evidence regarding the severity of a claimant's impairment and the effect of the impairment on a claimant's ability to work.). However, I do not find the ALJ's misstatement of law to amount to reversible error, as the ALJ provided other good reasons[2] for declining to give great weight to NP Komen's opinion.

After a thorough summary of the evidence in the record, including treatment notes from NP Komen and Komen's opinion as expressed in the mental impairment interrogatories, the ALJ stated:

> As a nurse practitioner, Mr. Komen is not an acceptable medical source and this opinion, standing alone, cannot constitute documentation of severe or disabling vocational limitations. Little weight is given to these opinions, as they are inconsistent with the level of symptoms, treatment, and observed limitations throughout the medical evidence.

AR 25. As noted above, the ALJ's first reason is a misstatement of the law. The ALJ's second reason, however, is a good reason and is supported by substantial evidence in the record as a whole for the reasons discussed by Judge Mahoney. *See* Doc. No. 18 at 7-11 (excluding the internal inconsistencies in Komen's opinions); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record."). These reasons include: the lack of an antisocial personality disorder diagnosis in NP Komen's treatment notes, lack of support in the treatment notes for the limitations described in the opinion, an overstatement about Velez's hallucinations and inconsistencies with other treatment notes in the record, Velez's own description of

---

[2] I agree with Velez that these other stated reasons do not include internal inconsistencies in NP Komen's opinions, as that is not a reason cited by the ALJ, but was raised by the Commissioner in responding to Velez's brief.

his limitations and limitations (or lack thereof) noted by the consultative examiner. I find no error with this aspect of the ALJ's decision. Velez's objections on this point are overruled.

## B.    *Development of the Record*

Velez argues the record should have been more fully developed concerning his physical limitations following the state agency consultants' review in 2016. He notes that his condition had worsened to the point he required shoulder surgery in 2017. He also had continued weakness and required a cane and knee braces following his 2015 back surgery. His knee issues required frequent injections. Velez also argues his morbid obesity and uncontrolled diabetes are unaccounted for in the RFC and are inconsistent with the ALJ's conclusions regarding his ability to stand and walk.

An ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press his or her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Judge Mahoney noted that in determining Velez's RFC, the ALJ relied on a thorough review of the medical records in addition to the opinions of the nonexamining state agency consultants. Doc. No. 18 at 13. The ALJ included the limitations identified by the state agency consultants in the RFC and added other limitations that he found were supported by other evidence in the record. *Id.*

Judge Mahoney summarized the ALJ's discussion of the medical evidence following the state agency consultants' opinions in 2016 and noted that Velez did not identify other limitations associated with his back and shoulder pain or knee issues aside from difficulty holding onto railings, reaching overhead and lifting – all of which were incorporated into the ALJ's RFC determination. *Id.* at 14. Judge Mahoney also

addressed the evidence related to Velez's ability to sit, stand and walk for six hours in an eight-hour day. She noted the medical records showed improvement in his pain following his back surgery in July 2015, and although he suffered ongoing knee pain, it improved or remained the same from November 2015 through July 2017. *Id.* The most recent record from July 2017 indicated Velez reported zero pain. *Id.* (citing AR 1281, 1288-90). The provider who saw him at that time noted Velez had a normal gait and encouraged him to engage in exercise to address his obesity. *Id.* at 14-15.

With regard to his obesity and diabetes, the state agency consultants opined that Velez should "[a]void ladders primarily due to the combination of obesity and some sensory peripheral neuropathy on EMG." AR 130, 149. The ALJ included limitations that Velez could not climb ladders, ropes, or scaffolds in the RFC. AR 16. He also referenced Velez's obesity and diabetes on numerous occasions throughout his analysis. *See* AR 104 ("The claimant is obese and diagnosed with diabetes mellitus); AR 21 (noting in October 2016, Velez was seen for a follow up of type 2 diabetes mellitus with neuropathic arthropathy and reported no weakness, no foot paresthesia, no dyspnea and no myalgias). An ALJ adequately considers a claimant's obesity when he specifically refers to it in evaluating the claim. *See Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009). *See also Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) ("Although his treating doctors noted that Forte was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions."). Velez does not identify additional limitations he thinks should have been included in the RFC related to his diabetes and obesity aside from lesser standing and walking. *See* Doc. No. 19 at 3-4. I will address that limitation below in conjunction with Velez's arguments related to his back and knee pain.

The ALJ acknowledged Velez's shoulder surgery in 2017. *See* AR 17, 22. He noted Velez testified he had undergone shoulder surgery in late July 2017, attended physical and occupational therapy, and then received help with his daily tasks from an

organization called Full Circle for about two years. *Id.* Velez testified he had difficulty reaching over shoulder level with his right arm (which the ALJ incorporated as a limitation into the RFC) and could lift only 15-20 pounds (another limitation the ALJ incorporated into the RFC). I find the record was sufficiently developed with regard to limitations associated with Velez's shoulder.

The ALJ also acknowledged Velez's longstanding history of back and knee pain. *See* AR 17-21. With regard to a need to use a cane and knee braces, the ALJ acknowledged use of these assistive devices in her analysis. *See* AR 18 ("The claimant was prescribed hinged range of motion braces and instructed to follow up in six to eight weeks. Subsequently, in November and December 2015, the claimant underwent knee injections."); AR 19 ("When seen in April 2016, the claimant continued to report his knees gave out when not wearing his braces."); AR 19 (noting the claimant "did continue to limp and use a cane" in September 2016); AR 20 (noting in February 2017 that his gait was guarded but he did not use an assistive device); AR 22 ("The claimant ambulated in a slow manner with the assistance of a cane."). The state agency consultant noted that in April 2015, Velez was walking slowly with a walker, but that after his back surgery, he was able to walk independently, albeit slowly. AR 131. *See also* AR 935 (noting that as of September 28, 2015, Velez was using his cane less than 80 percent of the time).

A physical therapy note from January and February 2016, noted an inconsistent use and reliance of SPC (single-point cane) from day to day and that he did not bring it in on his final day of therapy. AR 1056. Velez otherwise was noted to ambulate with a fairly normal gait and station. *See* AR 762, 765, 768, 771, 878, 881, 884, 887, 890, 1031, 1034, 1036, 1041, 1043, 1046. The state agency consultant also remarked that while Velez reported significant limitations in his activities of daily living, he completed this form while in the post-operation recovery period and that it was anticipated his functioning would continue to improve. *Id.* The ALJ noted that in February 2017, Velez walked without an assistive device and he was walking with "no pain" against medical advice following foot surgery. AR 19-20; AR 1261.

While there is some evidence that Velez continued using a cane after his back surgery, there is no evidence that a treating provider prescribed the cane or otherwise recommended he use it. An ALJ need only include limitations resulting from a claimant's use of a cane if the cane "medically required" as reflected in "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996). I find no error with regard to the lack of a cane limitation in the ALJ's RFC determination.

With respect to Velez's knee braces, the records do reflect that providers recommended Velez be fitted for hinged knee braces in October 2015. *See* AR 890. As of March 2016, Velez was wearing his knee braces and "doing much better" although his left knee had given way a couple times and he had fallen down. AR 1031. At a follow up in April 2016, the provider noted that his knees would give out when he was not wearing his braces and that he fell the day before his appointment. AR 1033. This suggests Velez was not always compliant with wearing the braces. More recent records suggest that Velez was no longer wearing the hinged knee braces but was prescribed non-hinged velcro knee support braces. A note from July 2016 indicates he was not using the braces at all times. AR 1233. A note from April 2017 indicates the braces were for "as needed" use. *Id.* Given Velez's inconsistent use of the braces and the lack of evidence concerning any additional limitations that would be imposed by wearing them, the ALJ did not err by failing to include a limitation in the RFC related to Velez's knee braces.

Turning to the physical limitations the ALJ did include in the RFC, Velez suggests that the record does not support his ability to stand and/or walk up to six hours in an eight-hour workday. I disagree. As noted by Judge Mahoney, the record contains multiple medical records, which the ALJ reviewed and summarized. *See* AR 17-26. The treatment notes reveal that providers consistently encouraged Velez to engage in routine physical activity (including walking), noting that it would improve his pain. *See* AR 965,

967, 970, 972, 978, 981, 983, 986, 988, 990, 992, 995. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) ("A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physician [ ] [is] recommending increased physical exercise.") (citation omitted). Indeed, Velez reported feeling better physically when he was doing physical therapy for his knee and low back. AR 973. Velez also reported that during pain relief, he was able to walk more and do more chores. *Id.*

One provider noted that Velez's big complaint was not knee pain, but his knee giving way, and thought this was related to his back. AR 884. Velez was referred to a specialist and ultimately underwent back surgery, which improved his pain. AR 887, 960, 964. After his back surgery, a physical therapist noted his pain was around 3 to 5 out of 10 most days and Velez primarily complained of stiffness in his low back. AR 1056. His range of motion and strength were within normal limits. AR 1056. While he continued to complain of knee pain after surgery, objective tests revealed mild degenerative joint disease and he was told "[h]is weight is contributing to a lot of his diffuse pain and he needs to address this with lifestyle modifications including weight loss, physical activity, and improved nutritional habits." AR 965. Velez also reported improvement with his knee pain through injections. *See* AR 1027 (knee pain of "5" on 11/30/15); AR 1030 (knee pain of "8" on 12/14/15); AR 1033 (knee pain of "4" on 4/26/16); AR 1036 (knee pain of "6" on 06/22/16); AR 1040 (knee pain of "1" on 10/19/16); AR 994 (knee pain of "2" on 11/29/16); AR 1045 (knee pain of "4" on 3/28/17 with a clinical progression note of "gradually improving"). *See* AR 18 at 14-15 (describing medical records demonstrating improvement with Velez's back pain and knee pain). His doctor discussed other options to treat Velez's knee pain, but Velez indicated he wished to proceed with injection therapy. AR 1046.

The record also contains the opinions of the state agency consultants, who opined that Velez could engage in light work. *See* AR 139-55. The ALJ adopted this limitation and included additional limitations that were supported by the record, including treatment

notes, and Velez's own testimony. The state agency consultant noted that Velez exhibited normal strength and sensation at his exams (except limited by pain), but that he had a normal gait and station. AR 149. While Velez's reports of activities of daily living were restrictive, they were made during the recovery period for his back surgery and the consultant anticipated that continued improvement would allow him to reach the level of functioning described in their opinion (including light work). *Id.* at 149-50. The consultant also noted there were no permanent treating source restrictions noted in the medical records. *Id.* Upon reconsideration in January 2016, a different state agency consultant noted Velez had not alleged any changes. He received injections for his left knee and the radiologist's interpretation of the x-rays was that he had mild degenerative joint disease with only some medial and lateral instability on the left greater than right. *Id.* The consultant concluded a preponderance of the evidence supported the initial RFC assessment. *Id.*

I agree with Judge Mahoney that the record was adequately developed concerning Velez's physical limitations without a need to order a consultative examination. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 20160 ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."); *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007) (when describing limitations, an explicit reference to "work" is not always necessary as long as the ALJ can ascertain a claimant's functional limitations "with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment."). Velez's objections on this issue are overruled.


## C.  *Appointments Clause Challenge*

Velez relies on the same arguments made in his principal and reply briefs regarding whether the ALJ was appointed in violation of the Appointments Clause of the United States Constitution. He notes that the Eighth Circuit Court of Appeals heard oral argument on November 13, 2019, in consolidated cases addressing this issue. He requests a delay in judgment until the Eighth Circuit issues its decision in those cases.

*See* Doc. No. 19 at 4. He also notes that on February 21, 2020, the Eighth Circuit consolidated a second set of cases involving Appointments Clause challenges to ALJs under the Social Security Administration and that these cases have been screened for oral argument. *Id.* Finally, Velez notes the Third Circuit recently decided that agency issue exhaustion is not required for constitutional claims for social security disability claimants seeking judicial review in federal district court. *Id.* at 5-6.

In *Lucia*, the Supreme Court held that administrative law judges of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, meaning that the President, a court of law or department head must appoint them. *Lucia*, 138 S. Ct. at 2049. Velez argues that this holding, when combined with the lack of an Appeals Council exhaustion requirement under *Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."), permits a claimant to challenge the appointment of a Social Security ALJ for the first time during judicial review. Doc. No. 14 at 13-15. Velez argues that even if there was an exhaustion requirement, the constitutional claims exception and the futility exception apply. *Id.* at 16-18. In the alternative, Velez asks for discretionary review of the Appointments Clause challenge under *Freytag v. Commissioner*, 501 U.S. 868 (1991). *Id.* at 18-20

The Commissioner argues that the Eighth Circuit has already rejected the line of reasoning used in *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). *See* Doc. No. 20 at 2 (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 793-98 (8th Cir. 2013) and *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003)). He explains that the Third Circuit concluded claimants need not raise their Appointments Clause challenge during the administrative proceeding because it was a constitutional claim and Social Security proceedings are non-adversarial. *Id.* at 2 (citing *Cirko*, 948 F.3d at 155-57. In *RELCO Locomotives*, the Eighth Circuit concluded constitutional claims are subject to the usual rules of forfeiture and in *Anderson* concluded claimants must have first

presented their claims at some point during the administrative proceedings. *Id.* The Commissioner notes that the Third Circuit attempted to distinguish *Anderson* by noting that a Social Security ALJ could not have granted relief on an Appointments Clause claim but could have granted relief on the forfeited claim in *Anderson*. *Id.* (citing *Cirko*, 948 F.3d at 158-59, n.11). The Commissioner contends the appropriate inquiry is not whether a particular adjudicator could have granted relief, but whether the agency itself could have granted relief. *Id.* He contends the Commissioner could have granted relief as demonstrated by the fact that the Commissioner has appointed ALJs. *Id.* at 3. He argues the court should continue to reject Appointments Clause challenges to Social Security ALJs when the plaintiff did not raise the issue during the administrative proceedings. *Id.*

*Cirko* is not binding on this court. Multiple district courts outside the Third Circuit have declined to follow its holding. *See Gagliardi v. Soc. Sec. Admin.*, Case No. 18-cv-62106-BLOOM/Valle, 2020 WL 966595, at *4-6 (S.D. Fla. Feb. 28, 2020); *Ramazetti v. Comm'r of Soc. Sec.*, No. 8:19-cv-260-T-MAP, 2020 WL 428950 (M.D. Fla. Jan. 28, 2020); *Streich v. Berryhill*, No. 3:18-cv-01977 (RAR), 2020 WL 563373, at *2-3 (D. Conn. Feb. 5, 2020); *Ricks v. Comm'r of Soc. Sec.*, No. 18-1097-RLB, 2020 WL 488285, at *3-4 (M.D. La. Jan. 30, 2020). Others have adopted it or reached similar conclusions. *See Suarez v. Saul*, No. 3:19-cv-00173 (JAM), 2020 WL 913809 (D. Conn. Feb. 26, 2020); *Tommy A.D. v. Saul*, Case No. 18-CV-536-FHM, 2020 WL 905213 (N.D. Okla. Feb. 25, 2020); *McCray v. Soc. Sec. Admin.*, No. CIV 19-0090 JB/GBW, 2020 WL 429232 (D.N.M. Jan. 28, 20202). Until the Eighth Circuit decides otherwise, I stand by my previous decisions that "claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings." *See, e.g.*, *Gilbert v. Saul*, No. C18-2045-LTS, 2019 WL 4751552, at *19-20 (N.D. Iowa Sept. 30, 2019).

As Judge Mahoney explained, every district court within the Eighth Circuit to consider this issue has reached the same conclusion as has the majority of courts around the country. *See* Doc. No. 18 at 17-18 (citing cases). I decline to issue a stay in this

case pending the Eighth Circuit's decision in either set of consolidated cases. This objection is overruled.

## V.    *CONCLUSION*

For the reasons set forth herein:

1.    Plaintiff's objections (Doc. No. 19) to the Report and Recommendation (Doc. No. 18) are **overruled**.

2.    I **accept** the Report and Recommendation **without modification**.  *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Mahoney's recommendation:

a.    The Commissioner's disability determination is **affirmed**; and

b.    Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 9th day of March, 2020.

_____
Leonard T. Strand, Chief Judge